I understand that everybody's here, so I'll dispense with the calling of the calendar and we'll start right away with United States v. Theom, 17-2765. May I proceed? Yes. Good morning, Your Honors. May it please the Court, my name is Jonathan Edelstein. I have the honor of representing the Defendant Appellant Mahmoud Thiam. Your Honor, it is the Defendant's position that when a foreign law is used as a predicate for prosecution in an American court, it's subject to American constitutional limitations, including the prohibition against vagueness. And that in this case, where the Guinean statutes in question require a quid pro quo in exchange for, quote, an act within the scope of his or her, meaning a public official's functions or job, unquote, that these standards of vagueness are set by the McDonnell case. So, and we submit, as we've stated in the briefs... Do you agree that the McDonnell case purported only to construe a particular domestic statute? Well... Is that a yes or a no? Actually, no, Your Honor, because it... I think it had a worldwide pronouncement. Well, what I think is that, first of all, in the McDonnell case itself, those limitations were applied not only to Section 201, but to the honest services fraud. And this Court, in the Skelos case, has since applied them to part of Section 666. And the worldwide... Well, which it didn't in this case, but McDonnell is not only a rule of jury instructions. It's a rule of, you know, what constitutes the crime and what doesn't. What acts are...what official acts are official enough to be within the scope of the crime and which ones are not. And we've raised both sufficiency and jury instruction arguments, and I would submit McDonnell does apply to both. But returning to the worldwide application question that Your Honor asked... Do you think that every statute that's passed around the world then becomes subject to our constitutional analysis if the case involves money laundering? I mean, don't we owe a certain degree of comedy or respect to the decisions of other countries? And also, I might also just ask you whether you think the Ghanaian government might be somewhat surprised that we held their statute unconstitutional. Well, Your Honor, first of all, the McLean case holds that when a foreign statute is used as the hook to prosecute someone under American law, the defendant is still being prosecuted under American law. The Ghanaian statute is only the predicate, which means that, you know, that this is taking place in an American court and it's subject to the United States Constitution. And the McLean case held that Mexican law... What was done was basically criminal. Well, yes, and again, it's this court determining rather than a Ghanaian court. And I would submit that's the reason why American constitutional limitations do apply. You know, as in the McLean case, which construed Mexican law under American vagueness principles. And in addition, I think that this court should be wary of going, you know, going further than Guinea. Your argument is not that Ghanaian law is unconstitutional, but that what he did here was not a crime, of which the money laundering statutes would take cognizance. Correct? That's correct, although the issue of whether what he did here is or is not a crime does go back in part to the Ghanaian law. Okay, but it goes back to Ghanaian law, but you're saying Ghanaian law is unconstitutional or is too vague or improper to follow. Should we discuss whether your client committed a crime as we see it? I think that the McDonnell case really renders it irrelevant, you know, whether all of us here in this room think of what he did as bad or tawdry. You're trying to apply McDonnell to the Ghanaian statute. Correct. I'm saying, okay, you're applying McDonnell to the Ghanaian statute. Maybe it's vague. Maybe there's a problem there. But you don't need a Ghanaian statute to prosecute for money laundering here if what he did was the proceeds of criminal activity. Well, what he did was the only way that this… I mean, what he did was to obtain money from China, this Chinese entity that he was dealing with, and many millions of dollars. And it was concealed as to how it was delivered to him in order to facilitate the mining deal that the Chinese wanted. Well, the underlying act, though, is not a crime in the United States. I mean, all of this took place off American soil. This takes place in Guinea. But 1956 specifically contemplates the possibility of a foreign bribery scheme as an underlying predicate act. Yes, but then it has to be a crime under the relevant foreign law. So let me ask you about that just to follow up. Was there not expert testimony from a person, an expert on Ghanaian law relating to Articles 192 and 194? There was an affidavit submitted prior to trial in which it translated the Ghanaian law. And there was no testimony at the trial because basically the parties agreed on what that affidavit said. So you agreed and it was not rebutted, and that purported to interpret what Article 192 and Article 194 covered, the conduct, correct? Correct, and the language in which it set forth Articles 192 and 194 was very similar to 18 U.S.C. 201. Part of your argument is that this couldn't be an official act, correct, as contemplated by McDonald? Correct. So if that's true, why is it the case that a minister of mines initialing a shareholder agreement is not an official act? Because the testimony made clear that in the circumstances of this case, he was not the one who approved this. He was not the one who signed it. He was not the one who drafted it. My question is why isn't that an official act? So if a congressman receives some amount of money from whoever, and as a result of that signs something or initials an agreement on behalf of the government, why isn't that an official act even in the U.S.? I think there is a difference between signing something, which means you are officially approving it, and initialing it, which means you're there. And maybe under some circumstances, I apologize for talking over you, Your Honor, maybe under some circumstances initialing could be an official act, but under the circumstances of this case, as testified to by the Guinean officials who were government witnesses, the initialing was not an act of approval by Mr. TM because it had already been approved by the president, who was a very autocratic figure, and by the prime minister. Well, but his initials indicated his agreement that this deal should go forward, correct? Well, Your Honor, there's no testimony in the record that said that initialing something in Guinea constitutes an agreement as opposed to... I'm not saying whether it constitutes an agreement. I'm saying that he's the minister of mines, and he's initialing the deal, and then it goes on for approval elsewhere, but with his blessing. Giving his blessing by assigning his initials to it, it seems to me is an official act, isn't it? Well, if there were testimony in the record that initials mean a blessing in Guinea, which none of these Guinean officials, even those who testified for the government, provided, and certainly even if... Is there a reference? Well... The jury? I think that the inner workings of the military government of Guinea in 2009 is not something that's generally known and that a jury could infer in the absence of testimony about how the Guinean government worked, especially since the testimony in this case was the opposite, that this was a very top-down autocratic government. No one's blessing was necessary but the president. And even if this court were to conclude that this, you know, that that was an official act or that it might be one, that still comes back to the jury instructions where this court held in silver and skillos that even if an act might be official, this is something that a properly instructed jury needs to consider. And in this case also, the government, in their summation, urged conviction of Mr. Tiam, not just because of the initials or even because of the Singapore trip, which is discussed in the briefs, but because of emails and, you know, standing up and saying this is a good thing at meetings, which the McDonnell court has held not to be official. Let me just ask one other question. Yes. Was the McDonnell case statute-specific as to 201, the bribery statute, and focusing on that and what was required in that particular case? And haven't there been other cases that have dealt with McDonnell arguments in other contexts by simply pointing out that fact, that 201 was what was at issue in McDonnell and nothing else? Well, again, Your Honor, in McDonnell itself, it wasn't only 201. It was also 1346. And it was- Other statutes that have been as to which the McDonnell argument has been raised and rejected. Yes. Because McDonnell was confined to its circumstances. Well, Your Honor, I would actually submit that the dividing line was provided by the Sewell case in the Eighth Circuit, which is cited in the brief, which says that in that case, finding that McDonnell did not apply where a statute did not require, quote, a meeting of the minds about an official act. So I would submit there's your dividing line, meeting of the minds about an official act. And the Guinean statute here, which is worded very similarly to 201, in terms of an act within the functions or job of a public servant, does require meeting of the minds regarding an official act. And then, in addition, that the McDonnell court also applied many extra textual factors outside the language of 201. Thank you very much. And- You've passed your time. You've reserved three minutes for rebuttal. Yes, Your Honor. Thank you. May it please the Court, my name is Alicia Cobry, and I represent the United States on appeal. I also represented the United States before the district court. Both appellant's arguments, both the sufficiency argument and the argument relating to the jury instructions rely on the incorrect presumption that McDonnell applies here. McDonnell does not apply. McDonnell, first of all, relied principally on a close reading of a particular statute. As Judge Walker pointed out, the text of a particular bribery statute, section 201, which is far different from the text of the Ghanaian statutes that were at issue here. Have we said that in a precedential opinion? That is, have we said that McDonnell is confined to those statutes? That is, 201 and honest services. Your Honor, in Boylan, this court declined to apply McDonnell to 666, which has a different text. It declined to apply McDonnell to a state court bribery statute, which was being applied in that case through the Travel Act. So yes, Your Honor, this court has said. By implication, you're saying? I suppose so. I mean, the court's explicitly- What I'm asking is, have we directly said that McDonnell is confined to certain statutes that were at issue in that case, and not any broader than that? Your Honor, I think it may have been implicit, but it's relatively clear from a reading of Boylan that that's- I think the question is, have we actually said that? Our court. No, you don't have a direct case that actually says that. Maybe that's what you perhaps would like us to hold in this opinion. But we have it up to now. Correct, Your Honor. What you have said, though, was there was a challenge in Boylan to the 666 statute and to the Travel Act, this New York State bribery statute, and in those cases, even though the same concerns being raised here regarding constitutional concerns about McDonnell were urged on the court, the court nonetheless upheld those statutes as interpreted. In addition to the fact that McDonnell is a statutory interpretation case, it did rely on some constitutional concerns. However, none of those concerns are applicable here. There's no concern about sort of the democratic concerns or the federalism concerns are simply not at issue here. The court here, the statute here is applying Guinean law, which if anything would be furthering the causes of federalism rather than the opposite. And the statute here was not vague. It fairly precisely, though broadly, prohibits value being exchanged for actions within the scope of the job functions or position of the official. So there's nothing vague about that. And even if there was some element of vagueness, vagueness challenges, as the court has pointed out, need to be as applied. In this case, I think there's not really- Let me give you a hypothetical, Mr. Kilbrey, because I'm trying to ferret out exactly what it is that the government wants. So in this case, the government somewhat unusually put in expert testimony in the form of an affidavit about Article 192 and 194. Is that right? Yes, Your Honor. Prior to trial, as part of a motion to eliminate, the government moved for the court to instruct the jury on foreign law. There's a provision, federal rule of criminal procedure 26.1. Yes. So just hypothetically, what would have happened if the defense had disagreed and had put in its own affidavit and there was a dispute about the, in the context of a criminal case, dispute about what Article 192 and 194 covered? In that case, the court, I believe there are cases that say that that's a matter to be decided by the court as a matter of law, and the court would have had to choose between one of them and then instruct the jury appropriately. It's a pure legal matter. That's correct, Your Honor. And, okay. And finally, even if Your Honor McDonough were to apply here, all the acts that were proven here were official acts, Your Honor. There was one question or matter before a minister that was at issue at trial here, which was whether the Ghanaian government was going to enter into an agreement with the Chinese conglomerate. And all the acts described during the trial, including the initialing of the shareholder agreement, but going well beyond that, including the e-mails that Mr. Choms sent in furtherance of that, including the ministerial meetings which were proved up, are all official acts. And we know that because of the expert? No, Your Honor. We know that because of what? We know that because when you look at the acts and you evaluate them under the standards set forth in McDonough and the prior precedents of this court, they're all acts that are in furtherance of this decision to enter. When you refer us to McDonough, then you're telling us that McDonough somehow has an effect on our view of what constitutes an official act in this case. No, Your Honor. I'm saying even assuming that McDonough were to apply. Oh, I see. The government's position is that McDonough doesn't apply here, it was relating to a different statute, and it's just there's no application of McDonough here whatsoever. But even if somehow the court were to find that McDonough applied, there would be no plain error here because all the acts that the government pointed to at trial were all official acts. And then finally, Your Honor, just turning to the appellant's other arguments, very quickly, there was more than sufficient evidence of a quid pro quo here, including not only the suspicious timing, the fact that it was just two weeks prior to the entry of the shareholder agreement that Minister Chum opened up a bank account in Hong Kong and received $3 million from the Chinese conglomerate, but repeated lies to that bank and to banks in the United States to conceal his status as a public official and his lies about the source of the money. So there were all sufficient evidence. And to the extent that the appellant has made certain evidentiary challenges, those were all reviewed for abuse of discretion, and Judge Cote did not abuse her discretion with respect to any of those. May I go back to the initial question about 1956? So the statute defines specified unlawful activity as, among other things, an offense against a foreign nation involving bribery of a public official, right? Yes, Your Honor. And that was the theory of the government, that this was a form of bribery of a public official? Correct, Your Honor. Is there more of a definition of bribery that I can look to? Your Honor, there's a footnote in our brief. The bribery at—but, Your Honor, there are cases. There's a Forsyth case from the Third Circuit, and there are other cases which explain that when you look at that, I think those cases actually apply in the Travel Act case, but they would be equally applicable here. It's a generic definition of bribery, what would commonly have been understood as bribery, and so these Canadian statutes fit comfortably within a generic— Have we adopted that? That is, have we adopted the view that this is really a generic definition of bribery in 1956? Yes, Your Honor. Oh, have you? I'm sorry. I'm sorry. Have you adopted that? Your Honor, I'm not aware of—no, I have not seen a case. My research hasn't revealed a case where this Court has specifically said, you know, what is—how do you define bribery as it's specified in the money laundering statute? I believe there is a Second Circuit case that we cite, again, in that footnote, and I believe that that case made reference to the fact of a generic definition with respect to the Travel Act and how the statute is laid out in the Travel Act. And I would just say that there was no—just to add, there was no challenge by the defendant in this case at all to whether the Canadian bribery statutes met the definition. We might be able to elide that question or avoid that question. Correct, Your Honor. And if the Court has no further questions, the government rests on its brief and asks that the judgment of conviction be affirmed. Very briefly, Your Honor, first of all, the Boylan case involved 666A1B, which proscribes acceptance of a payment in exchange for being influenced or rewarded in connection with a business or transaction of an organization, government, or agency. In connection with is much broader language than within the scope of or on an official act. And, in fact, in Boylan, the parties agreed that no official act was involved in this, you know, that there was no official act standard. Whereas in this case, the jury was instructed in terms of an official act. And in the Skelos case, this Court did apply McDonnell to another section of 666, and the Boylan Court itself applied McDonnell to Hobbs Act extortion. So I think that the case law is clear that this is not 201 specific, that the McDonnell applies to, in general, to cases involving bribery in exchange for official acts. In terms of the government's contention that- My problem with the application of McDonnell here is that McDonnell was decided in the context of the governor performing- doing acts which were deemed to be non-official that were designed to favor his constituents in certain ways, or a constituent in that particular case. You know, allowing him to promote a company that would normally the governor might want to promote, but- and it was a constituent favor that way, as opposed to an official act. Here, I don't see any of that. That context doesn't apply at all here. I mean, you're not saying that somehow the Chinese were constituents of the Ministry of Mines in the McDonnell sense. Well, one of the services that a Minister of Mines does is to bring mining and economic development to his country. His constituents are the people of Guinea. He is bringing a Chinese company in to help develop Guinea. That is- that, I think, brings it within the scope of constituent service, even if it's a foreign company providing the services. And I would note that in both Stelos- in Guinea, generally, in theory, to have the Chinese come in and take 85% ownership of their mines, that satisfies the constituent aspect of it. Well, 15% is actually a pretty standard government royalty in these deals, including subsequent deals by civilian governments of Guinea. But I would note also that in both the Stelos and the Silver cases, the payments were not made by people living in Stelos or Silver's districts. That these were not people who were voting for Stelos or Silver, or who were direct constituents of Stelos or Silver. So I would submit this court has not applied that as narrowly as the government would advocate. And, yes, I would say that bringing economic development to Guinea, just like Governor McDonnell wanted to bring economic development to Virginia, is one of the situations that this is intended to cover. And, finally, if- I know I'm out of time. Our Congress was explicit and decided to draw a larger statute than 201, one that encompassed more activity. Congress could do that, right? I mean, there's no question, but the legislature would have the power to criminalize whatever it wanted to. Essentially, I'm not saying it would be good policy at all, but they could do that. Yes, if the legislature wanted to criminalize taking meetings or making phone calls or speaking up- So why can't the Guinean government decide to criminalize what it criminalizes? And why should we be second-guessing that? Well, if there were a Guinean statute that said meetings and emails and making phone calls is an official act or is punishable, then I think that this court would have to apply it. But where you have a Guinean statute that really is no more definite than 201, the same vagueness problems apply that apply to 201. Didn't the expert talk about that? The affidavit discussed that? Yes, and the affidavit discussed it in language that's no more definite than 201. An act within the scope of a public official's function or job, that's really no more definite than official act. And I know- Thank you very much. Okay, thank you, Judge. We'll reserve the decision, and we'll hear from you.